Hi everyone. Yesterday I introduced our guest judge, and I'd like to do it again. Judge Wallace Tashima serves on the U.S. Circuit Court of Appeals for the Ninth Circuit, and Judge Garris and I are very grateful for his participation with us, and we thank Judge Tashima again. Thank you. Okay. Let's call the first case, AT&T v. FCC, Comtel Intervenor. Mr. Stretch. Good morning. May I please the court call on Stretch on behalf of Petitioner AT&T? I'd like to reserve four minutes of my time for rebuttal. Yes, sir. Thank you. I'd like to devote the bulk of my time this morning to addressing the merits of the FCC's order on review, and then turn to the alternative grounds for affirmance proposed by the FCC, and then address the separate argument raised by Comtel. Now this case involves the applicability of FOIA Exemption 7C to internal confidential AT&T documents that AT&T provided to the FCC in connection with a law enforcement investigation that came about only because AT&T voluntarily disclosed certain concerns to the agency. Now our position is that those internal confidential AT&T documents, documents that say nothing about the workings of government and are therefore far afield from the central thrust of FOIA, are protected from disclosure under Exemption 7C, which protects records or information compiled for law enforcement purposes to the extent production could reasonably be expected to constitute an unwarranted invasion of personal privacy. Can I ask you a question procedurally? Did AT&T voluntarily approach the FCC once it discovered there was some issue? Yes, Your Honor. Factually, we discovered in the ordinary course some concerns about certain universal service invoices, and we raised those concerns with the agency without any obligation to do so. I don't think anyone's ever suggested that we were compelled under any rule or statute to bring these forward, but as part of AT&T's effort to engage in a dialogue with the FCC and as part of its publicized culture of compliance, that's what it did. It was at that point that the FCC's Enforcement Bureau issued a letter of inquiry. Well, now, let's get to the documents. Were the documents handed over voluntarily? Did AT&T have a packet and say, we think there's a problem here, look at all this stuff? Or was there some sort of process that the FCC sent out interrogatories or requests for production of documents or whatever? It's the latter, Your Honor. Once AT&T raised these concerns with the agency, at that point, the FCC's Enforcement Bureau issued what's called a letter of inquiry, which included a whole set of interrogatories as well as some requests for documents. Does the manner in which you presented the case to the FCC have a bearing on how we interpret Exemption 17? I think it does, Your Honor. I think it does. I think when you get to certainly the balance of interests here and the privacy interest that's protected by Exemption 7C, I think the court has to interpret the statute with some recognition of its purpose. And one of its core purposes, we know from the Abramson case in the Supreme Court, is to facilitate the free flow of information to the government. If we should consider those circumstances, then shouldn't we also consider the fact that you made no request for confidentiality when you turned them over? Respectfully, Your Honor, I think that goes to the FCC's alternative grounds for affirmation. I understand that. You're saying we should consider the circumstances of how they were turned over. Your Honor, Rule 457 of the FCC's Rule 0.457 makes quite plain that documents that are submitted that essentially fall within Exemption 7C are not ordinarily available for public inspection. Rule 459 then says that documents that are covered by 457 do not need a separate request for confidentiality. Now, just in terms of the particular facts on the ground, this was obviously a confidential, the initial disclosure was a confidential submission to the FCC, a confidential meeting. And the ensuing investigation was, AT&T understood in any event, to be confidential. Certainly, as soon as AT&T was made aware that there was a FOIA request, AT&T immediately filed an extensive letter explaining its basis for resisting disclosure. On Rule 457, I couldn't help but notice that Section G deals with investigatory records. Really, I mean, I guess they said there was a default because you didn't make this privacy request, but is there any default at all, really? Because they could be considered investigatory records? Maybe I'm reading it wrong, but perhaps that's not before us, but I know that was the FCC's conclusion. What the FCC concluded, at least my understanding of the FCC's conclusion, is that if you go to 457 D1 and 2, D1 says if you're within a certain category of documents, things like financial records and the like, you're automatically covered. You don't need to submit a separate disclosure. And then D2 says if you're not within D1, you need to submit a request for protection. Subsection D in its entirety goes only to Exemption 4. It has nothing to say about Exemption 7C. Our position is that, yes, exactly, Your Honor. You go to G, the investigatory records, and then look at — Because I thought that's what we were talking about here. That's exactly what we're talking about, Your Honor. So did you need to make a separate request then? Our position, Your Honor, and we note this in our reply brief, is absolutely not that we didn't need a separate request upon initial submission, that it was sufficient to provide the letter resisting disclosure once a FOIA request came about. I don't think the Court actually needs to reach that point because the FCC, quite plainly in the order under review, didn't rely on this as a basis for disclosure.  Let me go back a second to the point you were making before, though. I'm not sure yet whether you get over the personal privacy issue. And Judge Tashima made a very good point about your failure to request confidentiality in your initial submission. Nonetheless, you turned all this material over to the FCC, material concerning some alleged wrongdoing and so forth. So you cooperated fully. It seems to me that the driving force of 7C is to encourage participation with law enforcement procedures and agencies, which is what you did. So if we say we're going to disclose these records then, that seems to me it would work a chilling effect on corporations cooperating with the FCC. I mean, that's a point in your favor. I don't know about personal privacy, but I thought that that's what you were getting at. I think you're exactly right, Your Honor. I think you're exactly right. And this case is an excellent example. The case begins with a voluntary disclosure. And at that point, really from that point forward under the FCC's rule, anyone, including a trade association representing AT&T's competitors, can use that, can use the ensuing investigation essentially as a fishing expedition. The Supreme Court made quite clear in Reporters Committee that Exemption 7C is not a discovery tool. It's not intended to permit parties to obtain information about third parties that reveal really nothing about the workings of government. Now, I do want to address, Your Honor, the question about the statute, because I do think that's where the court really has to begin in addressing the FCC's order. The FCC didn't reject AT&T's claim because it looked at the documents and decided they weren't confidential or that they didn't implicate AT&T's privacy interests. What the FCC did is it decided that AT&T as a corporation, as a rule, has no privacy interests for purposes of Exemption 7C. In its view, the word personal as a modifier necessarily excludes corporations and limits the privacy interests of Exemption 7C to individuals. That result cannot be squared with the text of the statute. Now, we know that the statute expressly defines person to include corporations. We know, as Judge Fischer stated in his concurring opinion in the Delaware River case, that a statute that defines a noun thereby defines the adjectival form. Does it take a different definition when you pair personal with privacy? Your Honor, I... In that context, aren't we talking about individual privacy? I don't think we are, Your Honor, and certainly as a statutory matter, there's no reason to believe that. Indeed, as we noted in our briefs, Congress has, in numerous instances, used the term individual privacy. And there is simply no answer to this question. I'd be interested to hear FCC's counsel answer it this morning because we haven't heard an answer yet. If Congress intended to restrict Exemption 7C to individual privacy, why didn't it use the phrase individual privacy? It's used that phrase elsewhere. Well, they could have added the word corporate and personal privacy. Well, that would not have covered the sweep of the definition of person. Person in the statute is not just individuals. It's not just corporations. It also includes partnerships, associations, public or private organizations other than an agency. Now, simply, it certainly makes a lot of sense if Congress is intending the term personal to cover the... to mean, as it conventionally means, of or pertaining to a person. So we have to look elsewhere. And we can look at Exemption 6, which uses the same phrase, but it's always been interpreted to mean individual privacy. Respectfully, Your Honor, I don't think it's correct to say it's always been interpreted that way. There are cases in that direction. I do think the D.C. Circuit's decision in Judicial Watch points in the other direction. I think it referred to that reading of Exemption 6 as resting on a crab reading of the statute. There is some debate in the briefs about the precise meaning of Judicial Watch. But the more important point is that those cases that do restrict Exemption 6 to individual privacy, do so on the basis not of the term personal privacy. You won't find a case that says personal privacy means individual privacy. Therefore, corporations cannot invoke it. What the courts have said who have addressed this issue, they have said that the term personnel files, medical files, or similar files, that language... I'm not sure, you know, in this case what your contention is as to exactly what AT&T's privacy interest is. Is it like, you know, reputational interest? Is it like some kind of embarrassment? Or what is the privacy interest here? Your Honor, you've tapped into it precisely. There is a reputational harm. And the cases recognize a reputation as a privacy interest, a reputational harm? Absolutely, Your Honor. There are cases of this circuit and others that make quite clear that a core function of Exemption 7C is to prevent the harassment, embarrassment, stigmatization that comes from disclosure of information in law enforcement investigations. And that's exactly... It seems like what you're worried about, though, is harm to your corporate status or economic well-being or goodwill, not types of harm that occur from invasions of personal privacy such as embarrassment or harm to reputation. Your Honor, I do think that that phrase, harm to reputation, is telling. AT&T does have a reputation, and it relies on that reputation and its relationships with consumers and its relationships with vendors and its relationships with regulators. And that core interest is something that can very seriously be harmed by disclosure of information related to law enforcement investigations. Now, it does not result in the corporation blushing. I'll concede that. But the point is there are harms associated with publicly disclosing information that would otherwise be kept private. The plain reading seems to me, when I look at the phrase personal privacy, it seems like a bit of a stretch to say it also means corporate privacy. I mean, that's my plain reading. I suppose you can give it a plain reading and interpret it your way. Shouldn't we just give it that plain, ordinary reading of personal privacy, meaning individual privacy? Your Honor, respectfully, I disagree. We know certainly that the term personal can refer to corporations. We know from Section 1391C of Title 28. Is it personal or person? Personal jurisdiction in 1391C. Congress said corporations can be subject to personal jurisdiction. We know as far back as 1871 in the Supreme Court's mercantile bank case cited in a brief, which refers to a tax exemption as a personal privilege running to the corporation. So there's nothing unusual about using the word personal to describe a corporation, particularly when the statute itself defines person to include corporation. Now, another, I think, important point is when you pair that with privacy, we know from decades of precedent, in particular the Supreme Court's 1977 decision in GM leasing, that corporations do have privacy interests. Now, we're not saying that in all cases those privacy interests are equal to individual privacy interests. That's not the question. The question is whether corporations have privacy interests at all. And we know from GM leasing that they do. There's simply no dispute on that fact. And finally, we know from the Supreme Court's decision in Favish, and I think this is a critical point I'm quoting here, that the statutory privacy right protected by Exemption 7C goes beyond the Constitution. So paired against all of that, these traditional tools of statutory interpretation, the fact that person is defined to include a corporation, the fact that personal can be and often is used to refer to a corporation, the fact that when Congress wants to limit privacy rights to individuals, it uses the term individual privacy, I don't think this common sense understanding that the FCC relies upon can carry the day. The D.C. Circuit is the circuit that seems to have the most involvement with interpreting 7C. And it's always, seems like it's always, or for the most part, has interpreted personal privacy as individual privacy going back as much as 30 years. Now, you're arguing against that legacy of jurisprudence, asking us to go completely against that body of law. Your Honor, that's a very important point I'm glad you raised. I think the primary decision that the FCC relies upon in the D.C. Circuit is this Washington Post case from 1988. And what the Washington Post case did is it described the privacy interest covered by Exemption 7C as extending to, I'm quoting here, information of an intimate personal nature. And then it gave certain examples such as marital status and legitimacy of children and identity of fathers of children. And what the FCC did, and I think your question goes to that, is the FCC said that, well, if that defines the scope of Exemption 7C, well, corporations don't have these intimate concerns and therefore cannot invoke Section 7C. The law is absolutely clear that that intimate language does not define the scope of the privacy interest protected by Exemption 7C. And let me explain. And that's true not even in the D.C. Circuit as well. Let me explain. A year after the Washington Post case, in Reporters Committee, the Supreme Court said, and I'm quoting here, that information is private for purposes of Exemption C. If it is intended for or restricted to the use of a particular person or group or class of persons not freely available to the public. And this court in Davin looked at that particular language, and I'm quoting here, as providing guidance on the proper understanding of privacy interest. That's the test. What was stated in Reporters Committee, what was stated in Davin, not freely available to the public. And I want to close. I see my time is up. I want to close with a critical point. Even in the D.C. Circuit, this intimate language does not define the scope of Exemption 7C. And we know that because even in Washington Post, the D.C. Circuit said that information that indicates whether a particular person is or has been a target of a law enforcement investigation is covered. That has nothing to do with these intimate concerns. So whatever that language means, it doesn't mean that it defines the scope of Exemption 7C. Otherwise, the D.C. Circuit would not have said that this core function that 7C provides to protect information indicating whether a particular person is or has been a target of a law enforcement investigation, it wouldn't automatically be covered. Thank you. Mr. Krasnow. Pleased with the Court. Good morning. I'm Michael Krasnow from the Federal Communications Commission. I think it's important not to lose sight here of common sense. The plain, ordinary, everyday meaning of personal privacy, if we were to go out on Marcus Street and ask 10 passers-by, would be that it pertains to individuals, natural people, not an artificial entity such as a corporation. Now, the meaning of... What would be the definition then? I mean, how do we get around the fact that Congress sought to define person? I understand they didn't define personal, but that seems to be a hurdle for you. Well, Your Honor, if we look to the legislative history of the FOIA, when Congress enacted the FOIA in 1966, they explained that the phrase personal privacy pertained to individuals. That's when they were enacting Exemption 6. Now, in 1974, when they amended Exemption 7 to create 7C, Senator Hart, on the floor, recognized that he was introducing the phrase personal privacy because it had to use the same meaning as it had in Exemption 6, and they were inserting that into 7C to make clear that the personal privacy protections in Exemption 6 also applied to Exemption 7. Well, I mean, we can't... I mean, I understand what the legislative history says, but we go to the plain language of the statute first, right? So it's a hurdle. Well, I think, Your Honor, the meaning of the person clearly is not in dispute. The operative language here is the phrase personal privacy. And as I believe Judge Fuentes pointed out, both Exemption 6 and 7C use that same phrase, personal privacy. And I don't think AT&T can square that that phrase should have one meaning in Exemption 6 and yet another meaning in 7C, because the law is clear that a phrase used in one statute, in one part of the statute, should have the same meaning in another part of the statute, particularly, as this circuit has found, when it's used in two statutory subsections that have the same purpose in design. Mr. Cresnell, can we go back over a point we were discussing with Mr. Stretch? If we can put aside for a moment that AT&T did not seek confidentiality ruling when it initially turned over these files and documents to the FCC, given the driving force of 7C, which is to encourage individuals and parties to participate with law enforcement, knowing that their personal information or private information would not be publicly disclosed, why would you treat a corporation different from an individual in that context? In other words, why wouldn't you want to encourage corporations and business entities to participate with law enforcement? Well, Your Honor, here I think it's important to point out that, in fact, the disclosure here, my understanding, it was not what we consider a voluntary disclosure. In fact, the disclosure came in the form of a supplemental response to a pre-existing letter of inquiry. That, in turn, so AT&T was under an obligation to respond to that existing letter of inquiry. That, in turn, prompted the FCC to issue the letter of inquiry here, requesting the records from AT&T. I think as to the... But Judge Fuentes' question is a bigger question than just, I mean, you can squabble about exactly how it got there, but what about the next case, the corporation that's out there that is thinking about making voluntary disclosure? Well, you know, I think as a corporation, you don't have the same rights necessarily, privacy-wise, as individuals. I think a corporation is an artificial entity. In this case, it's a regulated entity by the FCC, and as such, it has certain responsibilities that differ from individuals. Irrespective of whether AT&T felt compelled to disclose information, I mean, wouldn't the FCC want to encourage this type of activity, to have businesses cooperate with law enforcement? And the way to do it is to say, yes, personal privacy should include corporations. Well, I think, Your Honor, voluntary cooperation with law enforcement agencies is certainly a noble end. However, the agency here is bound by the FOIA, and FOIA is a pro-disclosure statute, and its exemptions are designed to be narrowly construed, as the Supreme Court has found. Therefore, unless records fall within one of those exemptions, which they did not here, the agency is obligated to produce them. Mr. Krasnow, I want to ask you about a different subject here, Ralph. You really, the FCC really hasn't taken a position in this case, at least expressly discussed it, as to this court's jurisdiction, right? But obviously, implicitly, you agree with AT&T that this is the proper way to bring this before the courts, right? But now, can you, I'm sure you must have considered Comtel's position about, well, this should have gone to the district court. Can you just tell me briefly what your process of reasoning was in getting to your conclusion? Certainly. The FCC did not consider subject matter jurisdiction. A question here, and therefore did not address it in its brief. It was raised for the first time, as you pointed out by Comtel, in its brief that was filed the same day as ours. Now, and we're happy to address this in post-argument briefs, if you would like. Our position is that we do agree with AT&T that this court has subject matter jurisdiction over this case. We certainly don't agree with them on the merits. Now, I would point the court to the media access project, the FCC case in the D.C. Circuit back in 1989, which was cited in AT&T's brief, which I believe answers the very question that Comtel raises here. Basically, this was a final order of the Federal Communications Commission. Under 402A of the Communications Act, such orders go to the Court of Appeals. The Court of Appeals has exclusive jurisdiction under the Hobbs Act. Now, in media access project, the FCC, ironically perhaps, the FCC took the very position that Comtel takes here, that an order under the FOIA, or that was interpreting the FOIA, was not an act, or an order under the act, as used in 402A. The majority D.C. Circuit rejected that position, saying basically that while the FCC may be called upon to interpret other FOIA, and that statute may drive the FCC's decision, that does not change the fact that it's an order under the Communications Act. And I can point out, as well, that the FCC's confidentiality rules here were promulgated under the Communications Act, and the underlying substance of this whole matter, and the records at issue, pertains to and arose under the Communications Act, an FCC investigation of one of its regulations. Is there any question that there is jurisdiction in the district courts? In the district court for this case? Yes. I mean, there is a complaint that was filed by Comtel, I believe initially, in the district court of the D.C. Circuit. So there's no question that the district courts have jurisdiction. Well, that's actually a separate matter, Your Honor. That was a FOIA lawsuit brought by Comtel, seeking, in which the FCC withheld the documents. And in the FOIA, there's actually a specific carve-out for jurisdiction in the district courts. It's under 5 U.S.C. 552 A.4.B. that gives the D.C. Circuit jurisdiction, I'm sorry, the district court jurisdiction in that situation, where an agency is withholding records, and the party wants them released, which is different than the situation here. What if we were to agree with Comtel and say we have no jurisdiction? Well, I would, frankly, dismiss the appeal. But what happens to AT&T's case? It's tough for me to speculate. I suppose you'd have to ask AT&T what they would do at that point. I imagine they would try to go back to the district court. But our position is that this court has jurisdiction over this appeal. Again, we're happy to address it.  but I was just trying to see that the Comtel's position would put us in a dilemma. Yeah. And I'm not sure how to resolve it. Well, Judge, again, I would direct you to the Media Access Project, the FCC, which I believe answers the very question Comtel has raised here. Can I ask you about, I'm a little unclear on the procedural default issue. What is FCC's position on that? Because I'm not entirely clear. Our position there is basically that the letter of inquiry informed AT&T that it needed to request confidentiality for any records that it considered confidential. They didn't do that. Therefore, they've waived. But you're able to waive your own regs. I understand your position. I mean, at this moment, is that really an issue here? It could be read as not really constituting holding at all. It could be read as a waiver of, we understand this issue, but we're going to disregard it and go right to the merits. What's your position on that? Our position, Your Honor, is that Paragraph 6 of the order specifically found, and I quote, we find that SBC's application for review does not conform with the Commission's rules, because despite notice from EB of its right to do so, they did not seek confidential treatment of their submissions in accordance with Section 0.459. The FCC went on to address the merits because it had an obligation, as recognized in that same paragraph under the Trade Secrets Act and Exemption 4, to ensure that records were not improperly released. So how does that affect us then, if that is considered a solid holding, an alternative holding, if you will? Yes. How does that affect us, and how do we handle that at this point? Sure. Well, you could certainly, I mean, is that a threshold issue for us to get through? Well, I think you could look at it two ways. On the one hand, you could certainly deny AT&T's petition for review on the basis that they, you know, failed to appeal this threshold issue. On the other hand, I think even if you get to the merit tier of whether there's a corporate privacy interest under 7C, I think you would still find in our favor on that. Okay. Well, let me give you another reading of 7C. And the term person has been interpreted in many other contexts to include corporations. And so, as Mr. Stretch says, that person, personal privacy should include the definition in those other contexts to include a corporation. If Congress had intended personal privacy to mean individual privacy, it could have used the term individual privacy. And the fact that it didn't may mean that it intended person to include corporations. I think, Your Honor, there's no need to accept AT&T's invitation to look outside of a FOIA to other contexts and constitutional amendments and so on. I think the answer lies right before us. Well, the problem is we need help interpreting what it says, so we look in other places. Sure. Well, I think we can look at four decades of legal precedent, particularly in the D.C. Circuit, which I realize is not binding here. But the court, the D.C. Circuit and Washington Post basically said that 7C does not protect business information and decisions or business relationships, which I believe is the very question here. Now, undoubtedly when the court directed release of the, it was a report by corporate directors of Eli Lilly about an arthritis drug that had caused certain deaths and injuries. Clearly, that type of report contained information that would have been embarrassing to the corporation. However, the D.C. Circuit rejected the application of 7C in that context. I really think that that's very instructive here as to how this court should approach the issue. Now, I think AT&T argues that Judicial Watch has somehow superseded that case. My understanding, Judicial Watch doesn't even cite Washington Post, and certainly one panel of the D.C. Circuit cannot overrule another panel. I think, frankly, Judicial Watch had nothing whatsoever to do with corporate privacy. AT&T has not cited a single case that supports its position here. I think even if the court were to consider the language personal privacy to be ambiguous, it's required to construe that language consistent with the structure and design of the FOIA and its exemptions, which here, FOIA is pro-disclosure, and its exemptions are to be narrowly construed. So any ambiguity needs to be resolved in favor of disclosure. Well, there is an exemption that protects corporate property and proprietary information. That's absolutely correct, Your Honor. Exemption 4 protects competitively sensitive information, confidential and financial information. That's the very type of information that would apply to a corporation. Here, the FCC has gone through all the records, reviewed all the records, and redacted all information that could be competitively sensitive, commercial and financial information that would typically cause harm. But that's FCC's position. We wouldn't be here if AT&T felt the same. Well, the exemption 4 issue is actually not before this Court. They're just maintaining that all of the records need to be withheld, a blanket withholding based on this law enforcement. Well, there's more than that. I mean, it's got to be. Well, I guess one other point I did want to make is that AT&T's reading of the statute really would turn back time or restore it to the pre-1974 version of Exemption 7, in which case the FBI was holding back all law enforcement records, and Congress stepped in specifically to reject that interpretation and to impose limitations on what documents may be withheld by agencies. And I see my time is running short. If the Court has any further questions. Is there any legislative history that is of any help here in interpreting what the phrase should be taken to mean? Absolutely, Your Honor. There is, I would say, quite clear legislative history. When the FOIA was enacted in 1965, the Congress explained that by unwarranted invasion of personal privacy, we mean the privacy interests of individuals. Now, in 1974, when Exemption 7C came into being, Senator Harp from Michigan, on the floor, introduced 7C, the same language, personal privacy, and said, explain, I'm doing this and using the same language as in 6, to make clear that the personal privacy protections in Exemption 6 will also apply to 7C. And that's the way the courts have interpreted it ever since. Okay. Good. Mr. Krasner, thank you very much. Thank you. Ms. Albert? Good morning, Your Honors. May it please the Court, I'm Mary Albert, here on behalf of Comptel, the intervener in this case, and the filer of the Freedom of Information Act request that got everything started. I want to thank the Court for giving me a couple minutes today, and I hope to use that time to persuade you that we shouldn't be here. The seminal reverse FOIA case, Chrysler v. Brown, which began in this circuit, the Supreme Court basically stated that jurisdiction to review agency disclosure actions under the APA is derived from 28 U.S.C. 1331. That provision bests original jurisdiction in the district courts to set aside or enjoin agency actions. You know, but the Supreme Court also said in Chrysler that, very clearly, that there is no right under FOIA to prevent disclosure. That's correct. So this can't be a FOIA action, because the Supreme Court said there is no right under FOIA to prevent disclosure. Well, this isn't a FOIA action. It is not? It is not a FOIA. Right. But the FCC's order was issued under FOIA, and that's what's being appealed here. How do you know it was issued under FOIA? I mean, we just heard AT&T's argument for 20 minutes about Exemption 7C. That's how FOIA was applied, but it was issued. Well, according to Mr. Krasnow, it was issued under the agency's authority under the Communications Act. He just said that. Well, Your Honor, I would disagree. I mean, it's not as clear as you say that it was, you know, action was under FOIA, is it? Well, I think it is. Section 402A of the Communications Act and the Hobbs Act, on which AT&T relies, provide that jurisdiction to review all FCC orders under the Communications Act will be exclusively in the Court of Appeals. But I think AT&T has repeatedly stated in this case that its beef is not with the Commission under the Communications Act, but with its interpretation, as you said, of a FOIA exemption. In its motion for you. Well, I agree with that. I'm sure AT&T agrees with that, too. That's the beef, you might say. Well, in the Media Access Project case, which the FCC was just discussing, was an appeal of an FCC rulemaking proceeding. There's no question that FCC rules are subject to appeal under Section 402A. This is not a rulemaking proceeding. And I think that you would be hard-pressed to find any reverse FOIA cases that were not started in the district courts. Indeed, AT&T, in our FOIA case against the FCC that's pending in the D.C. Circuit, I mean in the district court for the District of Columbia, made the exact same FOIA arguments or reverse FOIA arguments that it has made to the court in order to try to get the district court to dismiss the or reverse the FCC's Enforcement Bureau decision. The remedy that you seek here is what? Dismissal of the appeal? Dismissal of the appeal. And then Mr. Stretch is left with what remedy? I suppose he goes back to a district court case? Well, I think he's out of time for that, Your Honor. Well, is your case still pending in the D.C. District Court? Yes, it is. It's been stayed pending resolution of the issues, yes. What is the remedy you seek in that case? We seek the FCC to produce documents which we claim have been unlawfully compelled. So in effect, AT&T has a remedy in that case, right? Well, yes, assuming that the district court actually in that case, when it stayed the case because it said AT&T's reverse FOIA claims were premature because the FCC had not issued a final decision, clearly expected to get the case back. But Judge Fuente says if they haven't, they mean AT&T could intervene in your suit.  And that's where it raised the questions initially. They have a remedy there, presumably, don't they? Presumably. I mean, your argument has a certain appeal, a bad word, a certain attraction, because we would have a little more meat to work with, I suppose. We would have a district court record to look at. Right. Or the D.C. Circuit. But maybe Mr. Stretch has some comments about that. Thank you. Thank you. Thank you, Your Honor. Very briefly on the jurisdictional point, certainly we're not out of time. There's a six-year statute of limitations that would govern in the event the court were to dismiss the suit. Obviously, our position is that it shouldn't. The difficult issue, of course, is that in the D.C. Circuit, there's no jurisdiction in the district court to entertain this sort of reverse FOIA case under the Media Access Project case. If this court were to dismiss, we'd have to examine our options, but potentially we'd have to file a district court case in this circuit, and it raises some certain jurisdictional issues that I'm not fully prepared to address at this point. The strength of your case is with Mr. Krasnow, the media case out of the D.C. Circuit. I'm sorry? The strength of your argument in support of jurisdiction is the media case. Yes, the media access case is certainly in support of our argument. On the merits, I think we heard no answer to the core plain language reading of the statute. We heard no answer why Congress would have defined person to include corporations and then intended personal to mean something completely different. We heard no answer to the question. What about Mr. Krasnow's legislative history argument? Right. The legislative history establishes one thing and one thing only, that personal privacy encompasses individual privacy rights. That point is not in dispute, nor is it in dispute that that was the primary purpose of Exemption 7C. Does it encompass individual rights or it means individual rights? That it encompasses individual rights, not that it means only individual rights. The definition of the word person — You mean Senator Hart didn't use the word only. Is that what you're saying? Correct. Correct. And that happens — I mean, if we're going to look at legislative history and as a barometer of the limits of statutory scope, instead of defining the primary thrust of it, then I think Senators are going to have to be a lot more careful in their floor statements because the phrase that Congress chose was broader than individual. In FOIA itself. Now, Mr. Krasnow criticized my argument for reaching to other places of the United States Code. I think Judge Fuentes' point is correct. You've got to look somewhere. And we know that elsewhere Congress uses the term individual privacy. We know that in FOIA itself and in the Closely Related Privacy Act, Congress used the word individual. It knew how to limit statutory provisions to individuals. And it didn't do that in Exemption 7C. Now, I do want to address this claim that our interpretation would roll the clock back to prior 1974 and that every conceivable law enforcement record would be protected from disclosure. That is simply false. And the reason it's false is that Exemption 7C and the cases are quite clear on this point. Once you invoke a privacy right that is cognizable under Exemption 7C, then it's a balancing test. Then you have the public interest in disclosure balanced against the privacy interest. And that's where any concern about the scope of corporate privacy rights and any concern about those privacy rights being less robust than individual privacy rights will come into play. But that is not a rationale for closing the door entirely to corporate privacy interests in the scope of Exemption 7C. And if we have your legal argument and we decide to send this back, isn't that the determination the FCC is going to have to make? Yes, Your Honor. I think, I mean, we've said in our briefs we don't actually think it's necessary in this particular case because there is no public interest in disclosure. But certainly in the ordinary case, yes, the FCC would say, okay, we have to do the balance that Congress intended under Exemption 7C. What's the public interest in disclosure? Comptel, please tell us. What is the privacy interest in these documents? AT&T, please tell us. And then it engages in a balancing test. There's no, it's simply not correct to say that this interpretation we're urging somehow cabins off this entire swath of documents and information from FOIA. That's simply not the way it works. Okay, we have to finish up your point, Mr. Scheich. Thank you very much. Thank you, Your Honor. These are very good arguments in a very tough case. It's a novel issue for us, so we will certainly take it under advisement and be as expeditious with the decision as possible. Thank you. We'll take the case under advisement.